IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| BETHANY ANDERSON, on behalf of themselves and others similarly situated, | Case No. 6:25-cv-02069-AP |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| ARB GAMING, LLC, d/b/a Modo.us, | |
| Defendant. | |

POTTER, United States Magistrate Judge:

Plaintiff Bethany Anderson filed this class action complaint against Defendant ARB

Gaming, LLC, d/b/a Modo.us (Modo), seeking damages and declaratory relief for alleged

violations of Oregon gambling laws. Defendant moves to dismiss the case based on lack of

personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Alternatively, Defendant moves to compel

arbitration of Plaintiff's claims based on an arbitration agreement to which Plaintiff allegedly

agreed to be bound. For the reasons discussed below, Defendant's Motion to Dismiss should be

DENIED. Defendant's Motion to Compel Arbitration should be GRANTED.

## BACKGROUND

Plaintiff is an Oregon resident who wagered and lost money on Defendant's website.

Compl. ¶ 9, ECF No. 1. She seeks to represent a class defined as "[a]ll persons in Oregon who

have paid and lost money and other things of value on Modo.us." Compl. ¶ 80. Plaintiff alleges

that Defendant operates a Casino Website that is "an unregulated and illegal gambling website."

PAGE 1 – FINDINGS AND RECOMMENDATION

Compl ¶ 2. On the website, users can play casino-style games; users wager money to play and receive prizes such as cash or cash-equivalent gift cards if they win. Compl. ¶ 5. Plaintiff brings claims under 28 U.S.C. §§ 2201, Oregon's Gambling Loss Recovery Statute, ORS 30.740, and Oregon's Unlawful Trade Practices Act, ORS 646.605. Compl. ¶¶ 90-133.

Defendant is a Delaware Limited Liability Company with its principal place of business in Florida. Fetchmeyer Decl. ¶ 6, ECF No. 23. Defendant operates a self-described "casino-themed social game compan[y]" wherein players can play games resembling casino-based games. Def.'s Corrected Reply Mot. to Compel Arbitration 6, ECF No. 42. According to Defendant, their website "offers customers the ability to access its free-to-play social games online" which are "designed solely for amusement and entertainment." Fetchmeyer Decl. ¶ 15.

## STANDARD OF REVIEW

### I.    Personal Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). To establish that jurisdiction is proper, a plaintiff "may not simply rest on the 'bare allegations of [the] complaint.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004)). However, "uncontroverted allegations" in the complaint "must be taken as true, and 'conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800) (cleaned up).

PAGE 2 – FINDINGS AND RECOMMENDATION

## II.    Enforceability of Arbitration Agreements

The Federal Arbitration Act (FAA) "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). The FAA codifies the intent that private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To that end, the question of whether parties agreed to refer a particular dispute to arbitration, is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 830–32 (9th Cir. 2022) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (cleaned up). Once satisfied that a valid agreement exists, courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. Thus, when considering a motion to compel arbitration, the court is limited to determining (1) whether a valid arbitration agreement exists, and if so, (2) whether the arbitration agreement encompasses the dispute at issue. *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir.2008)). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). Finally, when faced with questions regarding the "scope of arbitrable issues" within an agreement, courts should resolve such questions "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

PAGE 3 – FINDINGS AND RECOMMENDATION

Courts apply the summary judgment standard on a motion to compel arbitration because an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); Fed. R. Civ. P. 56. The party seeking to avoid arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

## DISCUSSION

### I. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Should be Denied

Defendant moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction under Rule 12(b)(2). Defendant argues it should not be "forced to litigate" in Oregon because it has no substantial connection to Oregon that would render it subject to this Court's jurisdiction.[1] Def.'s Mot. to Dismiss 2, ECF No. 22. The Court disagrees.

### A. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Oregon state law "authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution." *Ranza*, 793 F.3d at 1068 (citing Or. R. Civ. P. 4). Nevertheless, federal courts sitting in Oregon must still ensure an exercise of personal jurisdiction over a defendant "comports with the limits imposed by federal due process." *Daimler AG*, 571 U.S. at 125. Personal jurisdiction over a defendant is proper where the defendant has sufficient "minimum

---

[1] In response to Defendant's Motion, Plaintiff filed a Motion to Open Jurisdictional Discovery and a Motion for Judicial Notice. ECF Nos. 34 and 35. Both Motions are predicated on the Court granting Defendant's Motion to Dismiss. Because this Court recommends denying Defendant's Motion to Dismiss, it also recommends denying those motions as moot.

contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation modified)).

A foreign corporation may be subject to either general or specific personal jurisdiction. General jurisdiction "permits a court to hear 'any and all claims' against a defendant, whether or not the conduct at issue has any connection to the forum." *Ranza*, 793 F. 3d at 1068 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Because general jurisdiction confers broader judicial authority over a defendant, a defendant must have "continuous and systematic" contacts with the forum state to be subject to jurisdiction. *Id.* at 1069. In contrast, "specific jurisdiction exists when a case 'arises out of or relates to the defendant's contacts with the forum.'" *Id.* at 1068 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)) (cleaned up).

### B.    Specific Jurisdiction

Defendant's contacts with Oregon are not continuous and systematic to the extent required to confer general jurisdiction. *See Daimler AG*, 571 U.S. at 137 (a corporation is typically subject to general jurisdiction only in the state of it "place of incorporation [or its] principal place of business"). Plaintiff, for her part, seems to concede that general jurisdiction over Defendant is not extant[2]; Defendant is incorporated in Delaware and maintains its principal

---

[2] Defendant points out that ARB has no executives or offices in Oregon, does not solely offer its games in Oregon, does not target, advertise to or otherwise aim its games at Oregon residents. Def.'s Mot. to Dismiss 7. Moreover, Defendant states that its only continuous presence in Oregon is "three non-executive employees who reside in and work remotely from Oregon." *Id*. Defendant "has no physical presence" or property in Oregon, "is not registered to do business in Oregon," does not target or direct any of their marketing activities towards Oregon Residents, has never placed any advertisements in Oregon media outlets or targeted Oregon residents with advertisements. *Id*. The Court agrees that Defendant is not subject to general jurisdiction in Oregon.

PAGE 5 – FINDINGS AND RECOMMENDATION

place of business in Florida. Compl. ¶¶ 4-6. Instead, Plaintiff argues that this Court has specific

jurisdiction over Defendant, based on Defendant's ongoing business activities in Oregon.

In assessing whether specific jurisdiction exists, courts must focus on the relationship

between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84

(2014). Bearing these relationships in mind, the Ninth Circuit analyzes whether exercising

specific jurisdiction over a defendant comports with due process under a three-part analysis:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin v. Shopify, Inc.*, 135 F. 4th 739, 750-51 (9th Cir. 2025) (quoting *Schwarzenegger*, 374

F.3d at 802). The plaintiff bears the burden of proof at the first two steps. If plaintiff meets that

burden, defendant must then make a "compelling case" at step three that specific jurisdiction

would be unreasonable. *Id.* at 751 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477

(1985)).

### 1. Purposeful Availment and Purposeful Direction

The first prong in the specific jurisdiction analysis consists of two separate but related

tests: (1) the purposeful availment test, and (2) the purposeful direction test (also known as the

"*Calder* effects test"[3]). The purposeful availment test "typically applies to contract cases," while

---

[3] In *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), the Supreme Court articulated the *Calder* effects test, which "focuses on the forum in which the defendant's actions were felt, whether or

PAGE 6 – FINDINGS AND RECOMMENDATION

the purposeful direction test "typically applies to tort claims." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F. 4th 1154, 1162 (9th Cir. 2023) (citation modified). However, either purposeful availment or purposeful direction or some combination of both can satisfy the first prong of the personal jurisdiction test. *Briskin*, 135 F. 4th at 751 n.10.

### a. Purposeful Availment

The purposeful availment test is satisfied when a defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state," *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). When considering whether a company operating a website purposefully availed itself of the privileges of operating within a forum state, the Ninth Circuit applies a sliding scale test to identify "the 'nature and quality of commercial activity that an entity conducts over the internet.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011) (quoting *Zippo Mfg. Co. v. Zippo Dot Com Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

The sliding scale test instructs that at one end of the scale are active sites "where a defendant clearly does business over the internet." *Zippo Mfg. Co.,* 952 F. Supp. at 1124. This includes websites where a defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet." *Id.* In such cases, courts are likely to find that "personal jurisdiction is proper." *Id.* At the other end of the scale are passive websites that do "little more than make information available to those who are interested" and which, without more, do not support personal jurisdiction. *Id.*

---

not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F. 3d 1218, 1228 (9th Cir. 2011).

PAGE 7 – FINDINGS AND RECOMMENDATION

What remains is the middle ground which "is occupied by interactive [websites] where a user can exchange information with the host computer." *Zippo Mfg. Co.*, 952 F. Supp. at 1124. Websites occupying the middle ground must be examined for their "level of interactivity" and the "commercial nature of the exchange of information" to determine if the exercise of jurisdiction is proper. *Id*. In considering the relationship between personal jurisdiction and any website, the "common thread . . . is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F. 3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124.)

Applying the *Zippo* framework, Defendant's website is both highly interactive and highly commercial in nature. In considering interactivity, the website offers "casino style" games including "live table games where online players interact directly with live dealers via a webcam." Pl.'s Opp. to Def.'s Mot. to Dismiss 2, ECF No. 29. Defendant's website "allows Oregon residents to wager money and win prizes." Compl. ¶ 14. "Live" dealers or croupiers are pictured next to casino-style tables including craps, blackjack and roulette. Compl. ¶ 33. Each page indicates that the dealers are there to interact with players at the virtual tables. Smith Decl. ¶ 9, Ex. 7, ECF No. 30. Players earn "Sweepstakes Coins" through "promotions, daily logins, AMOE,[4] or bonuses with some GC purchases." Smith Decl. ¶ 13, Ex. 11.

As to the commercial nature of Defendant's website, Defendant conducts a significant number of different transactions with its customers. Players are encouraged to purchase "gold coins" which are sold in packages. Smith Decl. ¶ 12, Ex. 10. While the gold coins themselves are not redeemable for cash prizes, players can then win or earn "sweepstakes coins" that "can be

---

[4] Alternative Method of Entry.

exchanged for real cash prizes." Smith Decl. ¶ 13, Ex. 11. Players "often receive bonus sweepstakes coins" when they purchase gold coin packages. Smith Decl. ¶¶ 12- 13, Ex. 10-11. Players can redeem sweepstakes coins for cash through debit card transfer to the Visa or Mastercard used to purchase gold coins, through ACH bank transfer to the player's bank account, or redeem for gift cards. Smith Decl. ¶ 15, Ex. 13. Based on these facts, Defendant's website is sufficiently commercial.

Defendant argues that its financial transactions with Oregon residents are not significant enough to confer jurisdiction, citing a district court case from the Northern District of Georgia to support this argument. Def.'s Mot. to Dismiss 3-4 (citing *Fair Gaming Advocs. Georgia Inc. v. VGW Holdings Ltd..*, No. 1:24-cv-0901, 2024 WL 5113237 (N.D. Ga. Dec. 13, 2024)). In *Fair Gaming*, the court found it lacked personal jurisdiction because the "casino gaming websites" did little more than "accept[] payments from Georgia users in order to play the games." 2024 WL 5113237 at *4. The court further concluded that "a contingent of Georgia residents [who] happened to use and make purchases" amounted to "random, fortuitous, or attenuated" contacts, and were not sufficient to confer personal jurisdiction. 2024 WL 5113237 at *4-5.

The facts in this case are distinguishable from *Fair Gaming*. First, Defendant has more than incidental or random contacts with Oregon players. Oregon players are required to identify that they live in Oregon; they must verify their address and provide proof of their address by uploading documentation to that effect. Smith Decl. ¶ 16, Ex. 14. Second, many states are blocked from using Defendant's platform, meaning Defendant must proactively block users from those states where access is prohibited. Smith Decl. ¶ 5, Ex. 3. Players from states where access is not prohibited, including Oregon, are then solicited to return repeatedly to the website with promotional emails that offer things like birthday prizes and other sweepstakes. Anderson Decl.

PAGE 9 – FINDINGS AND RECOMMENDATION

¶¶ 7-9. Finally, Defendant's own website states that "[a]ccess to Modo is based on your physical location in real time."[5] Modo restricts players from accessing sweepstakes coins where such activities are prohibited by law, indicating Defendant is aware of and keeping track of players enough to differentiate between those who can and cannot legally access the full platform experience. Smith Decl. ¶ 5, Ex. 3. Based on these facts, Defendant's contacts with Oregon residents amounts to more than mere random, fortuitous and attenuated encounters.

b. Purposeful Direction

The next inquiry is whether Defendant purposefully directed its activities towards Oregon residents. To satisfy the purposeful direction test, a defendant must "(1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F. 4th at 751. A defendant need not have a physical presence in the forum state, so long as their efforts are purposefully directed toward residents of the forum state. *Id*. at 751-52.

Defendant's actions towards Oregon players are intentional acts and are expressly aimed at Oregon players. Defendant affirmatively collects residency information from individuals accessing the website. Compl. ¶ 17. Defendant denies access to people living in states that do not permit online gaming of the type offered through ARB's website. Smith Decl. ¶ 5, Ex. 3. As discussed above, players sign up and must affirm that they do not live in any of the "excluded" states or territories. Smith Decl. ¶ 6, Ex. 4. Players must verify their address by uploading documents showing their address, such as a utility bill. Smith Decl. ¶ 16, Ex. 14. Defendant

---

[5] *See* MODO CASINO, LOCATION RESTRICTIONS, https://support.modo.us/articles/-ry3xccuV1e (last accessed on June 15, 2026).

PAGE 10 – FINDINGS AND RECOMMENDATION

maintains account and banking information of Oregon players for the purpose of conducting financial transactions with Oregon residents.

Defendant would have the Court assume that any contacts with Oregon residents are "random, fortuitous acts of a user accessing games through nationally available websites and applications" as was the conclusion in *Fair Gaming*. Def.'s Mot. 11. But on these facts, the Court cannot agree with Defendant's interpretation. Indeed, Defendant's work to obtain and maintain the personal and financial data of Oregon residents sufficiently demonstrates that Defendant expressly aimed its activities toward Oregon residents. *Briskin*, 135 F. 4th at 758 (holding that "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its 'own choice and not random, isolated, or fortuitous'") (quoting *Ford Motor Co., v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)); *see also Mavrix Photo, Inc.*, 647 F.3d at 1230.

  2. <u>Plaintiff's Claims Arise Out Of and Relate To Defendant's Contact with Oregon</u>

Next, for specific jurisdiction to exist, the claims must arise out of or relate to the defendant's contacts with the forum state. *Briskin*, 135 F.4th at 760. Here, the claims arise directly out of Defendant's transactions with Plaintiff. Moreover, Defendant knew Plaintiff was in Oregon because Plaintiff had to provide her address and location in order to conduct any financial transactions such as buying gold coins or receiving sweepstakes coins.

Plaintiff's claims also relate to Defendant's contacts with Oregon because the financial harm alleged by Plaintiff is the kind of injury that would "tend to be caused" by Defendant's contacts with Oregon players. *Briskin*, 135 F.4th at 760 (citing *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2025)). Specifically, Plaintiff alleges that she gambled and lost money using Defendant's platform. Finally, Plaintiff's claims largely arise under Oregon law, and the

PAGE 11 – FINDINGS AND RECOMMENDATION

proposed class Plaintiff seeks to represent is entirely made up of Oregon residents. Compl. ¶ 80.

Thus, Plaintiff has alleged facts that satisfy the second requirement for specific jurisdiction.

### 3.   Fair Play and Substantial Justice

Finally, the exercise of jurisdiction must comport with traditional notions of fair play and

substantial justice. When the Plaintiff has satisfied the first two prongs of the test for specific

jurisdiction, the burden shifts to the Defendant to "present a compelling case" that the exercise of

jurisdiction would not be reasonable. *Briskin*, 135 F.4th at 761 (quoting *Schwarzenegger*, 374

F.3d at 802). In evaluating reasonableness, the Ninth Circuit employs a balancing test that

weighs seven factors:

> (1) The extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (quoting *Freestream Aircraft*

*(Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)).

Defendant argues that all seven factors demonstrate the unreasonableness of finding

personal jurisdiction would be proper in Oregon. First, Defendant argues that it has limited

contacts with Oregon; it is incorporated in Delaware with its principal place of business in

Florida and only three non-executive employees live in Oregon. Def.'s Mot. to Dismiss 13.

Defendant also argues that most of the witnesses and documentary evidence "is and are located

outside of Oregon." Def.'s Mot. to Dismiss 16. Defendant notes that any federal or state court in

Delaware would better serve as the exclusive forum. Def.'s Mot. to Dismiss 14. Defendant

further argues that the arbitration agreement and forum selection clause in the terms of use

supersede any interest Oregon may have in the efficient resolution of the case. Finally,

PAGE 12 – FINDINGS AND RECOMMENDATION

Defendant argues that Plaintiff has no interest in convenient or effective relief; if she had such an interest she would have "sought a quick a simple arbitration on behalf of herself." Def.'s Mot. to Dismiss 16.

Defendant's arguments do not persuade this Court that jurisdiction in Oregon would be unreasonable. Defendant has created a business model that requires Oregon residents to affirmatively declare and provide proof that they live in Oregon. And while it may be somewhat inconvenient to defend in Oregon, modern courts are more than capable of efficiently managing interstate claims, including exchange of discovery, depositions, and other case management requirements. Moreover, Oregon has a significant interest in adjudicating the dispute: the claims are brought under Oregon law and Oregon consumers make up the proposed class members. Balancing these factors against Defendant's arguments, the Court finds that jurisdiction in the courts in Oregon would be reasonable.

In sum, for the reasons discussed above, the Court finds there is sufficient evidence to warrant the exercise of specific jurisdiction over Defendant. Therefore, Defendant's motion to dismiss for lack of personal jurisdiction should be denied.

## II.    Defendant's Motion to Compel Arbitration Should Be Granted

Defendant separately moves to compel arbitration of Plaintiff's claims because "every Oregon customer of ARB's platform . . . affirmatively accepted and agreed to arbitrate individually through the Terms of Use, each of which included a class action waiver and provision requiring arbitration of all past, pending, and future disputes." Def.'s Mot. to Compel Arbitration 3, ECF No. 24. Plaintiff argues that Defendant failed to establish the formation of a valid agreement to arbitrate her claims because (1) the agreement lacks mutual assent; (2) the agreement is illusory; (3) the agreement lacks lawful consideration; and (4) the delegation clause is unconscionable.

PAGE 13 – FINDINGS AND RECOMMENDATION

## A. The Arbitration Agreement

### 1. Background on Defendant's Platform and Terms of Use

Defendant operates a website that allows users to play casino-style games. According to Plaintiff's Complaint, the website is "an unregulated and illegal gambling website." Compl ¶ 2. Regardless of the characterization of the website, everyone who wants to use the platform must sign up and create an account and register a user account. Colello Decl. ¶ 9, ECF No. 38. When a user wants to create an account, they see this initial screen:

Colello Decl. ¶ 11, Figure 1. The Terms of Use are hyperlinked, bolded, and in bright blue font. Colello Decl. ¶ 12. At all times applicable to this lawsuit, a user could not use the Platform unless they first agreed to and then accepted the applicable Terms. Colello Decl. ¶ 13. While the Terms have varied over time, all of the applicable Terms during the relevant time "required arbitration of all past, present, or pending, and future disputes." Colello Decl. ¶ 15. When the

PAGE 14 – FINDINGS AND RECOMMENDATION

Terms were amended, every user was required to re-agree to the amended Terms the next time they logged onto the platform. Colello Decl. ¶ 16.

     2.  <u>Plaintiff's Account</u>

Plaintiff created her account on or about August 8, 2024. Colello Decl. ¶ 17. Plaintiff last played on the platform on October 10, 2025. Colello Decl. ¶ 17. Defendant alleges the most recent version of the agreement that Plaintiff agreed to is the version of the Terms dated August 4, 2025. Colello Decl. ¶ 19. Defendant states that the August 2025 Terms include the following notice:

> IMPORTANT NOTICES
>
> . . .
>
> THESE TERMS OF USE INCLUDE AN ARBITRATION AND CLASS ACTION WAIVER AGREEMENT WHICH REQUIRES THAT ANY PAST, PENDING, OR FUTURE DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY, UNLESS OTHERWISE PERMITTED BY THESE TERMS.
>
> OPT-OUT. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION ON A RETROACTIVE BASIS AND AS TO ANY FUTURE CLAIMS, AND YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION WITH US IN CONNECTION WITH YOUR USE OF OUR SERVICES, YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE "BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" – SEE SECTION 16 OF THESE TERMS, BELOW. OPT-OUT REQUESTS SENT AFTER THE THIRTY (30) DAY PERIOD SHALL BE NULL AND VOID. EVEN IF YOU OPT OUT OF THE ARBITRATION AGREEMENT IN SECTION 16, ALL OTHER REMAINING SECTIONS OF THESE TERMS APPLY.

PAGE 15 – FINDINGS AND RECOMMENDATION

Colello Decl. ¶ 20, Ex. A (August 2025 Terms) at 1.

The operative Terms include a delegation clause "requiring that all past, pending, and future disputes be arbitrated, and that questions of arbitrability, enforceability, and validity be determined by an arbitrator." Colello Decl. ¶ 21. The arbitration provision states that the parties:

> agree that any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by you, your access to or us of any Platform or the Service, or to this Agreement, the Terms of Use, or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement.

August 2025 Terms § 17.2.

Plaintiff does not argue that she did not consent to the Terms when she created her account, only that Defendant cannot prove she agreed to the terms. Pl.'s Sur-reply 1, ECF No. 43. And Plaintiff attests that she is "unaware of Modo.us sending [her] any notification of a change in the website terms and conditions" and that she "was never given an opportunity to review any changes to the terms and conditions before they went into effect." Anderson Decl. ¶ 11, ECF No. 31. Plaintiff argues that Defendant's proffered evidence of contract formation, the Colello Declaration, is insufficient and provides only generalized statements with no particular facts pled as to the operative Terms to which Plaintiff allegedly agreed.

### 3. The Colello Declaration

Before turning to the question of whether the parties agreed to arbitrate, the Court must address Plaintiff's attacks on the veracity of the Colello Declaration, on which Defendant heavily relies. *See* Pl.'s Resp. to Def.'s Mot. to Compel 11-15, ECF No. 32; Pl.'s Sur-reply 2-4, ECF No. 43. Under the Rules of Evidence, a witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

PAGE 16 – FINDINGS AND RECOMMENDATION

Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

Personal knowledge and competence to testify can be reasonably inferred from a declarant's "position[s] and the nature of their participation in the matters to which they swore." *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). However, matters attested to "must be known to the declarant personally, as distinguished from matters of opinion or hearsay." *Siskiyou Buckle Co., Inc. v. GameWear, Inc.*, No. 09-CV-3073-CL, 2011 WL 5999869, at *2 (D. Or. Nov. 30, 2011) (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995)).

According to Plaintiff, the Colello Declaration cannot be used to prove a contract was formed because Mr. Colello "lacks personal knowledge" of the facts set forth in his declaration. Pl.'s Sur-reply 4. Plaintiff argues that Colello's personal knowledge and competence to testify cannot be inferred because his declaration "does not describe the specific records reviewed, does not attach account-level acceptance logs, does not provide timestamps of alleged assent, and does not include screenshots of the actual interface Plaintiff purportedly encountered when accepting the Terms." Pl.'s Sur-reply 2. Plaintiff further argues that the Court should reject Mr. Colello's declaration because he did not join Defendant's organization until October 2025 and thus cannot have personal knowledge as to Plaintiff's registration with the platform. Pl.'s Resp. to Def.'s Mot. to Compel 13.

Plaintiff is correct that Mr. Colello does not provide specifics as to what documents he reviewed to reach those conclusions, nor does he provide examples of historical data on which he based his conclusion that Plaintiff specifically "accepted and agreed to" the August 2025 Terms. Colello Decl. ¶ 19. And he does not provide any evidence that indicates whether he obtained

PAGE 17 – FINDINGS AND RECOMMENDATION

such knowledge after the fact through records or other exhibits the Court might consider. *See Charles v. Portfolio Recovery Assocs., LLC*, No. 3:17-CV-0955-YY, 2018 WL 5660747, at *8 (D. Or. Aug. 1, 2018), *report and recommendation adopted,* No. 3:17-CV-0955-YY, 2019 WL 722561 (D. Or. Feb. 20, 2019), *aff'd,* No. 22-35613, 2024 WL 1672350 (9th Cir. Apr. 18, 2024) (explaining that an affiant can "obtain personal knowledge of events and actions" by reviewing pertinent business records) (citation omitted).

But Mr. Colello does aver that he is familiar with the corporate and organizational structure of ARB as well as its operations. Colello Decl. ¶ 1. And he contends he is able to testify about the matters in the declaration based on his personal knowledge. Colello Decl. ¶ 2. It is not a stretch to conclude that the Vice President of Player Operations would have knowledge not only of ARB's current player terms of service but also of prior terms of service. Nor is it a stretch to believe that he would have sufficient knowledge to say that "every Platform user was required to re-agree to the amended Terms as a condition of continued use of the Platform and its services, upon the user's next login to or access of the Platform." Colello Decl. ¶ 16.

Moreover, Defendant does not need to offer evidence of the precise date or manner of acceptance to succeed in showing that Plaintiff accepted the arbitration terms. It is entirely reasonable to accept that the Vice President of Player Operation could have personal knowledge of a player's account—like Plaintiff's—by reviewing that account to determine when the account was opened, last used, and last logged into. Colello Decl. ¶ 17.

There is nothing disputing the fact that in order to continue to use the website, users had to agree to most current Terms. This is a fact that would be within Mr. Colello's knowledge. Mr. Colello makes clear that he knows all users would have to accept the then-applicable terms to use the website. Colello Dec. ¶ 30. And Plaintiff used the website after the August 2025 Terms were

PAGE 18 – FINDINGS AND RECOMMENDATION

released. Colello Decl. ¶ 17. That is sufficient for the Court to consider the August 2025 Terms, which the Colello Declaration includes as an exhibit.

To the extent Plaintiff focuses on Mr. Colello's lack of personal knowledge as to the specific date and manner in which Plaintiff accepted the agreement, that lack of knowledge does not compel this Court to disregard the August 2025 Terms. Nor does it necessarily defeat the proposition that an agreement to arbitrate was in fact formed particularly given that the earlier 2023 terms contained a provision to arbitrate. Based on the facts presented by both Plaintiff and Defendant, Plaintiff accepted the terms and conditions of the website and a valid agreement to arbitrate was formed.

### B.    The Parties Agreed to Arbitrate

Arbitration is "fundamentally 'a matter of contract,' and accordingly, 'a matter of consent.'" *Godon v. Bend-CDJR, LLC*, 348 Or. App. 61, 64 (2026) (quoting *Coinbase, Inc. v. Suski,* 602 U.S. 143, 147-48 (2024)). "When the parties dispute the formation of an agreement, the court, and not an arbitrator, must decide that threshold question." *Id*. (citing *Cornelio v. Premere Rehab, LLC*, 342 Or App 399, 404-05, 577 P.3d 847, *rev. den.*, 374 Or. 616, 583 P.3d 307 (2025)); *see also Granite Rock Co. v. Intl Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (stating that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"). But "in the presence of an otherwise-valid arbitration provision, a challenge that 'the [entire] agreement was fraudulently induced' or 'that the illegality of one of the contract's provisions renders the whole contract invalid' must be sent to the arbitrator." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (quoting *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 445-46 (2006)).

As discussed at length above, players are required to register, create an account, and provide address and age verification prior to conducting any transactions or playing any games on the Platform. Part of that registration process requires customers to agree to the website's Terms. Indeed, Plaintiff's own Complaint acknowledges that users cannot access the website without accepting the Terms and Conditions.[6] Compl. ¶ 75. And while Plaintiff does not recall whether she accepted the August 2025 Terms, she does not dispute that she did accept a version of the Terms when she registered in August 2024. Moreover, she offers no evidence contradicting Defendant's claim that updates to the Terms must be accepted as a condition of continued access to the Platform. And she does not dispute that she continued to access the Platform after the August 2025 Terms were released. Thus, with no evidence to the contrary and given Plaintiff's continued access to the Platform after the August 2025 Terms were released, it is reasonable to presume Plaintiff assented to the August 2025 Terms. *See Saeedy v. Microsoft Corp.,* 757 F. Supp. 3d 1172, 1201-02 (W.D. Wash. 2024) (finding sufficient evidence of assent where plaintiff continued to use products after receiving emails updating Terms of use) (collecting cases).

Furthermore, Plaintiff provided a copy of the Terms in effect as of December 29, 2023, prior to Plaintiff's registration with the ARB website. Smith Decl. ¶ 4, Ex. 2 (December 2023 Terms). The December 2023 Terms also include a broad arbitration agreement under which players agree to "resolve any Disputes – including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate – through final and binding

---

[6] Plaintiff makes much of the fact that prospective players can "access" the casino without assenting to the Terms by clicking the "X" on the registration clickbox. *See* Pl.'s Sur-reply 5-6. This action allows a person to view the home screen of Modo.us, but any attempts to interact with the games or functions on the home page further prompt the user to create an account and account creation requires that customers agree to the Terms.

PAGE 20 – FINDINGS AND RECOMMENDATION

arbitration."[7] December 2023 Terms § G(1). The provision to arbitrate has existed regardless of which Terms apply. *See Saeedy., * 757 F. Supp. 3d at 1202 (finding that one plaintiff was not bound by later terms and determined motion to compel arbitration based on earlier agreement).

Based on these facts, it seems clear that the threshold question of whether an agreement to arbitrate was formed must be answered in the affirmative. *See Kowalok v. ARB Gaming, LLC*, No. 4:25-CV-02161, 2026 WL 1113315, at *4 (N.D. Ohio Apr. 24, 2026), *report and recommendation adopted*, 2026 WL 1374144 (N.D. Ohio May 15, 2026) ("Because Kowalok does not dispute the existence or the scope of the Arbitration Agreement, the Court finds that his allegations do not create a genuine issue of material fact as to the existence of an Arbitration Agreement.").

### C.    The Arbitration Agreement is Not Illusory

Plaintiff next argues that lack of mutual assent and consideration renders any purported agreement illusory and unenforceable. Specifically, Plaintiff argues that Defendant's "unlimited and sole power to change the Terms at any time. . . defeats mutual assent" thus rendering the agreement illusory and unenforceable." Pl.'s Sur-reply 7. Plaintiff further argues that any unilateral modifications made to the agreement lacked consideration, or the consideration was

---

[7] The December 2023 Terms clearly advised of the arbitration agreement on the first page stating:

> PLEASE NOTE THAT THESE TERMS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS ACTION, GROUP, OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION G BELOW FOR MORE INFORMATION.

Smith Decl. ¶ 4, Ex. 2 (December 2023 Terms).

PAGE 21 – FINDINGS AND RECOMMENDATION

based on unlawful gambling conduct, rendering the agreement invalid. Pl.'s Resp. to Def.'s Mot. to Compel 17. The Court disagrees that the arbitration agreement is illusory and unenforceable.

        1.  <u>Mutual Assent</u>

First, it is well settled that a contract provision allowing a party to "modify terms unilaterally does not render the contract unenforceable." *Associated Oregon Veterans v. Dept. of Veterans' Affs.*, 300 Or. 441, 448, 712 P.2d 103, 107 (1985). When allowed by the contract, "unilateral changes are permissible" provided that any such modifications are made "in good faith and be based on fair dealing." *Nat'l Mgmt Servs, Inc., v. Qwest Dex, Inc.*, No. 01-CV-1772-HU, 2002 WL 35649667, at *5 (D. Or. Dec. 16, 2002); *see also Crites-Bachert v. Providence Health & Servs. - Oregon*, No. 24-6664, 2025 WL 3141932, at *2 (9th Cir. Nov. 10, 2025) (noting that Oregon law allows "unilateral changes" when the contract allows them).

Here, both the December 2023 Terms and the August 2025 Terms include a clause reserving Defendant's right to make unilateral changes to the agreement. *See* August 2025 Terms § 1.1; December 2023 Terms § B(e). Therefore, regardless of the version Plaintiff agreed to, the Terms included a provision permitting unilateral changes. There is no evidence that such modifications would be inconsistent with Oregon's good faith and fair dealing requirements. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615, 892 P.2d 683, 693 (1995) (Oregon law "imposes a duty of good faith and fair dealing in the performance and enforcement of every contract."). And Plaintiff was required to accept all material updates to the Terms by clicking a clickbox in order to continue to use the website. Colello Decl. ¶ 16. She did so; she could have chosen not to continue to use the website if she did not wish to accept. Thus, Defendant's ability to make unilateral changes does not defeat mutual assent and the agreement to arbitrate is not illusory and unenforceable. *Cf. Kowalok*, 2026 WL 1113315, at *6-7 (concluding based on Ohio law that that there was mutual assent for ARB's arbitration agreement).

PAGE 22 – FINDINGS AND RECOMMENDATION

2.   Consideration

Under Oregon law, a contract must be based on consideration. *Godon,* 348 Or. App. at 66. A mutual promise to arbitrate "is adequate consideration to enforce [an] agreement." *Wilson v. Bristol-Myers Squibb Co.*, No. 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018) (citation modified). However, when one party "has unlimited discretion to avoid its obligations, that party's promise is illusory." *Godon*, 348 Or. App. at 66. In Oregon, "illusoriness is a formation issue that is reserved for the Court." *Id*. at 67. Here, the terms specify that both the company and the customer agree to resolve all disputes, claims, or controversies through arbitration. August 2025 Terms § 17.2. Both parties are bound by the agreement to arbitrate their claims, which satisfies Oregon's consideration requirements. *Wilson,* 2018 WL 2187443, at *4. To the extent Plaintiff's claim is that any consideration was illegal because the contract itself involved an illegal enterprise (gambling), that cannot defeat arbitration. *See Buckeye Check Cashing, Inc.*, 546 U.S. at 446.

**D.     The Delegation Clause is Not Unconscionable**

Plaintiff's remaining arguments—that the Delegation Clause is both procedurally and substantively unconscionable—are not persuasive. "Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614, 156 P.3d 156, 160 (2007).

On the question of procedural unconscionability, Plaintiff argues that Defendant "drafted the Terms unilaterally and presented them to Plaintiff on a take-it-or-leave-it basis, with no opportunity for negotiation." Pl.'s Sur-reply 13. Plaintiff acknowledges that "take-it-or-leave-it" contracts do not render a contract unenforceable and instead points to the unequal bargaining power between the parties as evidence of unconscionability. Pl.'s Sur-reply 13. But this contract is not one where a person is forced to accept onerous Terms because they have no other choice

PAGE 23 – FINDINGS AND RECOMMENDATION

but to accept, which could trigger public policy questions as to contract formation. *See generally*, *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 340 P.3d 27, 38 (2014) (discussing public policy exceptions to enforcing take-it-or-leave-it contracts in a recreation business context).

Plaintiff accepted the terms to play casino-themed games online. And while Modo.us may be one of the larger players in the online gambling game, they are certainly not the only players. Plaintiff had other options for online casino-themed game play. Finally, both the December 2023 and August 2025 versions of the Terms provide opt-out instructions for the arbitration agreement, allowing the Plaintiff the opportunity to opt out within 30 days of entering into the agreement. December 2023 Terms 1; August 2025 Terms 1. "The presence of this opt-out provision weighs heavily against a finding of procedural unconscionability, as it establishes that Plaintiff retained a meaningful choice and was not compelled to accept arbitration as a condition of using the service." *Kowalok*, 2026 WL 1113315, at *8 (rejecting arguments that ARB's arbitration agreement was procedurally unconscionable).

As to substantive unconscionability, Plaintiff again raises questions of illegal consideration based on the fact that the service at issue here is gambling. As explained above, valid consideration can exist where both parties agree to be bound to a particular dispute resolution method, meaning the agreement is not based on illegal consideration. To the extent that Plaintiff is arguing that because gambling is illegal, the contract—including the arbitration provision—is void, the Supreme Court has made clear that an arbitration provision is severable from the contract itself and when the "crux of the complaint is that the contract as a whole[] is rendered invalid," that is an issue for the arbitrator in the first instance. *Buckeye Check Cashing, Inc.*, 546 U.S. at 446; *see also Kowalok*, 2026 WL 1113315, at *4-5 (determining issue of

PAGE 24 – FINDINGS AND RECOMMENDATION

illegality regarding ARB's August 2025 Terms should be decided by arbitrator in this first instance).

Plaintiff further argues that the right to appeal an award in excess of $50,000 effectively limits her access to appellate review and is therefore unconscionable. Pl.'s Sur-reply 15. The agreement language cited by Plaintiff states that the parties agree that

> any award issued by the Arbitrator in excess of $50,000 in favor of either party, or any award which grants any form of declaratory or equitable relief that would significantly impact other Modo users of the operations of the Platform, may be appealed in accordance with the JAMS Optional Arbitration Appeal Procedures at either party's election.

August 2025 Terms § 17.11. Plaintiff points to *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) as a related example of unconscionable one-sidedness in an agreement. In *Circuit City*, employees were forced to arbitrate any and all claims against their employer. *Id*. The Ninth Circuit found the arbitration terms unconscionable because the employer was not required to arbitrate any of its claims against employees. *Id*. No such problem exists in this case as the Terms bind both parties to the same bases for appellate review.

Plaintiff also challenges the statute of limitations in the agreement, which narrows the time a party has to file a claim to one year. August 2025 Terms § 15.3. But contracting parties may agree to a statute of limitations different from that which is otherwise imposed by statute, so long as the restrictions are not unreasonable. *Hatkoff v. Portland Adventist Med. Ctr.*, 252 Or. App. 210, 287 P.3d 1113, 1121 (2012); *Wood Park Terrace Apartments Ltd. P'ship v. Tri-Vest, LLC*, 254 Or. App. 690, 297 P.3d 494, 497 (2013). *See also Fink v. Guardsmark, LLC*, No. CV 03-1480-BR, 2004 WL 1857114, at *3 (D. Or. Aug. 19, 2004) (contractual limitations on time in which parties may bring a claim may be upheld if reasonable).

To the extent Plaintiff argues that provisions limiting financial liability beyond Oregon's statutory protections render the Delegation Clause unconscionable, those provisions are

PAGE 25 – FINDINGS AND RECOMMENDATION

severable. An offending contract provision may be severed if it is not an integral part of a contract. *Young v. Regis Corp.*, No. CV 06-6068-AA, 2006 WL 8459710, at *5 (D. Or. Aug. 2, 2006) (citing *Graham Oil Co. v. ARCO Prods. Co., a Div. of Atl. Richfield Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994), as amended (Mar. 13, 1995)).

Plaintiff seeks to recover under Oregon's Gambling Right to Recovery Statute and Unfair Trade Practices Act (UTPA). *See* ORS 30.740 and ORS 646.638. ORS 30.740 permits "persons losing money or anything of value at or on any unlawful game . . . shall have a cause of action to recover . . . twice the amount of the money or double the value of the thing so lost." Oregon's UTPA statute permits successful plaintiffs to recover statutory damages, punitive damages, equitable relief, and attorneys' fees. ORS 646.638. These are statutory rights granted under Oregon law. The Terms specify that when any limitations are "not permitted by law of any applicable jurisdiction, such limitations shall be deemed severable and stricken from these terms." August 2025 Terms § 15.7. Thus, to the extent the August 2025 Terms conflict with these statutory rights, those terms are severable.

Similarly, Plaintiff's concerns regarding costs of arbitration are unfounded. Section 17.10.6 of the Terms state that "JAMS rules will govern payment of all arbitration fees." August 2025 Terms § 17.10.6. The JAMS rules state that "[f]or matters involving consumers, the consumer is only requires to pay $250." JAMS ARBITRATION SCHEDULE OF FEES AND COSTS, available at https://www.jamsadr.com/arbitration-fees. Per the JAMS policy website, all other costs must be borne by the company, including any remaining JAMS Filing Fee, Case Management Fee and all professional fees for the arbitrator's services." JAMS CONSUMER ARBITRATION MINIMUM STANDARDS, available at https://www.jamsadr.com/consumer-

PAGE 26 – FINDINGS AND RECOMMENDATION

minimum-standards. Thus, regardless of what operative clause under which Defendant purports to compel arbitration, Plaintiff's rights are protected under the governing rules of arbitration.

## CONCLUSION

For the reasons discussed above, the Court recommends that Defendant's Motion to Dismiss be DENIED and Defendant's Motion to Compel Arbitration be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this  24th   day of June, 2026.

  /s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge

PAGE 27 – FINDINGS AND RECOMMENDATION